UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re:<br><br>BETTER BATH BETTER BODY LLC<br><br>Debtor | <br><br>Case No. 26-31525-mbn<br><br>Chapter 11 |

**DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND SALE PROCEDURES, (B) SCHEDULING AN AUCTION AND SALE HEARING, AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF**

Better Bath Better Body LLC ( "BBBB" or "Debtor"), by counsel, hereby files Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sale Procedures, (B) Scheduling an Auction and Sale Hearing, and Approving the Form and Manner of Notice Thereof, and (C) granting related relief (the "Motion") to facilitate Debtor's sale of substantially all of its assets. In support of this Motion, Debtor moves pursuant to sections 105, 363, 365 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of the following orders:

(a) an order (the "Bidding Procedures Order"), substantially in the form attached hereto as **Exhibit A**:

(i) approving proposed bidding and sale procedures attached as Annex 1 to the Bidding Procedures Order (the "Bidding Procedures") and related Bid Deadline (as defined below) in connection with the sale or sales (collectively, the "Sale Transaction") of substantially all of Debtor's assets (collectively, the "Assets");

(ii) Approving the Statement of Interest received from Debra and Marvin Cherney as the "stalking horse" bidder (such Statement of Interest, a "Stalking Horse Agreement" and, such bidder, a "Stalking Horse Bidder"), and to provide such Stalking Horse Bidder, with: (a) a break-

up fee (the "Break-Up Fee") of $6,000.00 included in the Stalking Horse Agreement, and (b) a minimum initial overbid in the amount of the Break-Up Fee plus $25,000.00 (the "Initial Overbid" and collectively with the Break-Up Fee, the "Stalking Horse Protections");

(iii) approving the date, and form and manner of notice, of an auction of the Assets (the "Auction") and related Sale Hearing (as defined herein), including the form and manner of notice attached hereto as **Exhibit B** (the "Auction and Hearing Notice"); and

(iv) granting certain related relief as described herein;

(b) an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit C**:

(i) authorizing the Sale Transaction, free and clear of all liens, claims and encumbrances, except for any liabilities assumed in the applicable Asset Purchase Agreement; and

(ii) granting such other relief as is necessary or advisable related to the foregoing.

In support of this Sale Motion, the Debtor respectfully represents as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. Venue of this case and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105(a), 363(b) and (f), and 1107(a), and Fed. R. Bankr. P. 2002, 6004, and 9014.

3. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUND

### I. The Debtor's business and the Filing of this Case

4. On June 3, 2026 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. Debtor is a Kentucky-based online retailer primarily marketing and selling through Amazon. Debtor's office and principal place of business is located at 10200 Forest Green Blvd., Suite 112, Louisville, Kentucky 40223. Debtor's warehouse is located at 301 Corporate Court, Shelbyville, Kentucky 40065. Debtor was founded in 2015 as a California based limited liability company but became a Kentucky based limited liability company by merger in May 2022.

6. Debtor sells bath soaks, foot soaks, sitz soaks, laundry powders, and shower tablets. All are made from natural ingredients and are sold individually, in bulk, and via private label. Debtor does not own either location from where it operates.

7. Additional information regarding the Debtor's business and the circumstances leading to the Chapter 11 Case are contained in the Declaration of Jason Clegg in Support of Debtor's Motion (the "Clegg Declaration"). The Clegg Declaration is attached as **Exhibit D**.

## II. The Sale Process and Related Items

### A. The Proposed Sale Transaction and Marketing Process

8. Debtor has determined that the best opportunity that creditors may have to recover value from the bankruptcy estate is through the sale of the Debtor's assets as a going concern. Stalking Horse Bidder has submitted a statement of interest to purchase substantially all of Debtor's assets. The total bid price for the Property is $100,000.00 (the "Stalking Horse Bid"). The Stalking Horse Bid is attached hereto as **Exhibit E**.

9. Prior to the filing of this Motion, Debtor privately solicited interest from individuals and entities that Debtor's management identified as prospective purchasers of Debtor's Property as a going concern. Following discussions and sharing of information

subject to customary confidentiality terms, Stalking Horse Bidder is the only one to have submitted a statement of interest to purchase Debtor's Assets.

10. Debtor is currently marketing the business assets for sale on the website businessesforsale.com. A true and correct copy of the advertisement is attached as Exhibit 1 to the Clegg Declaration.

**B. The Need for an Expedited Notice and Sale Process**

11. The Debtor has filed this Sale Motion on an expedited basis to ensure the Debtor is able to complete the sale of the Assets in a timely manner. Debtor's counsel is out of the country and unavailable for hearings September 7 – September 18. Given the rising administrative costs in this case, Debtor cannot support the Chapter 11 fees being incurred in this Chapter 11 reorganization.

**C. The Deadlines Contained in the Bidding Procedures Are Reasonable and Will Provide an Adequate Opportunity for Interested Parties to Formulate and Submit Bids**

12. In formulating the procedures and time periods, the Debtor had two principal objectives: (a) providing adequate and appropriate notice to parties in interest and to potential purchasers; and (b) efficiently selling the Assets. The Debtor believes the Bidding Procedures achieve both objectives under the facts and circumstances of this Chapter 11 Case. In the exercise of its business judgment, Debtor believes the parties who may have an interest in bidding at the Auction are among its creditors and investors. Further, Debtor has already organized a virtual data room making due diligence expeditious for interested parties. Thus, the timeline in the Bidding Procedures will prevent no party interested and capable of purchasing the Assets from conducting due diligence and submitting a bid.

13. The key dates the Debtor will utilize in connection with the Sale Transaction are as follows:

| EVENT | DATE |
|---|---|
| Bid Deadline | September 28, 2026 by 5:00 pm (Eastern Time) |
| Auction Date (if necessary) | October 1, 2026 at 10:00 am (Eastern Time) |
| Sale Objection Deadline | 7 days prior to Sale Hearing Date |
| Sale Hearing | October 13, 2026 (subject to Court availability) |

**A. The Bidding Procedures are Reasonable and will Allow the Debtor to Identify the Highest or Best Bid for the Assets**

14. The Debtor, in consultation with its legal advisors, designed the Bidding Procedures to maximize value for the Debtor's estate. The Debtor believes the Bidding Procedures will enable the Debtor to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtor's estate and creditors. The Bidding Procedures describe, among other things, the procedures for parties to access due diligence, the manner in which bidders and bids become "Qualified," the receipt and negotiation of bids received, the conduct of any auction, the selection and approval of any ultimately successful bidder, and the deadlines with respect to the foregoing Bidding Procedures. The Debtor submits that the Bidding Procedures afford the Debtor a sufficient opportunity to pursue a sale process that will maximize the value of its estate.

15. As described further below, the Bidding Procedures will permit the Debtor, as it deems necessary and appropriate in the prudent exercise of its business judgment to enter into one or more typical agreements with, and to grant certain typical Stalking Horse Protections to the Stalking Horse Bidder.

16. The Debtor has structured the Bidding Procedures, and the expedited relief this Sale Motion seeks, in a manner that complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. Further, the Bidding Procedures are designed to allow the Debtor to efficiently consummate a Sale Transaction. These Bidding Procedures provide this framework and will enable the Debtor to review, compare and determine which bids are in the best interests of its estate and its creditors. The Debtor respectfully submits that the Bidding Procedures are necessary to, and will assist it in and promote, its efforts to complete a sale of the Assets.

17. Subject to compliance with the Bidding Procedures, any party holding a first perfected security interest in the Assets shall be entitled to credit bid all or a portion of its claim for those Assets that constitute its collateral, in accordance with Section 363(k) of the Bankruptcy Code, unless otherwise ordered by the Court. If any party holding a first perfected security interest in the Assets who credit bids all or a portion of its claim is the Successful Bidder, then such secured party shall pay the Debtor in cash, regardless of the amount of proceeds actually paid, such amount as is necessary to pay the Break-Up Fee, if any, and the required quarterly trustee fees resulting from the transaction, if any are required.

18. The following is a summary of the major components of the Debtor's proposed Bidding Procedures:[1]

[1] The summaries of the material terms of the Bidding Procedures set forth below are qualified in their entirety by the specific terms and conditions of the Bidding Procedures. To the extent there exists any inconsistency between these summaries and the Bidding Procedures, the Bidding Procedures shall govern. Capitalized terms used but not defined herein are either defined later in this table or have the meanings given to them in the Bidding Procedures.

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Participation Requirements** | The Bidding Procedures detail certain requirements to participate in the bidding process, including, among other things, the execution of a confidentiality agreement. Each party meeting these requirements, set forth in full in the Bidding Procedures, has been or will be deemed a "Potential Bidder." The Debtor has provided or will provide all such Potential Bidders access to the Data Room (as defined below). |
| **Due Diligence** | The Debtor has established a confidential electronic data room (the "Data Room") containing due diligence materials relating to the Assets. Until the Bid Deadline, in addition to access to the Data Room, the Debtor will provide any Potential Bidder such due diligence access or additional information as the Debtor determines to be reasonable and appropriate in the circumstances. A Potential Bidder's access to additional due diligence will cease if (a) the Potential Bidder does not become a Qualified Bidder by the Bid Deadline; or (b) the bidding process is terminated. |
| **Stalking Horse Protections** | In the Debtor's discretion, a Stalking Horse Agreement may include Stalking Horse Protections, including (a) the Break-Up Fee, and (b) Initial Overbid. |
| **Bid Deadline** | The Debtor will solicit bids by September 28, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"). |

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Bid Requirements** | To be a "Qualified Bid" (and such Potential Bidder submitting such bid, a "Qualified Bidder") a bid must meet the requirements enumerated in the Bidding Procedures, including, among other things, the following: (a) written evidence of available cash, commitment for financing, or such other Evidence of ability to consummate the transaction contemplated by the Potential Bidder along with contact information for a person whom the Debtor may contact to obtain additional information regarding the Potential Bidder's ability to consummate the transaction; (b) provide a Statement of Interest mark up and proposed sale order against the Stalking Horse Agreement; (c) provide for consideration that is higher or better than the consideration provided for by the Stalking Horse Agreement, taking into account the Break-Up Fee; and (d) disclose the identity of each entity and the control persons of each entity that will be bidding or otherwise participating in connection with such bid. The bid made pursuant to the Stalking Horse Agreement (a "Stalking Horse Bid") is deemed a Qualified Bid for the Assets and such Stalking Horse Bidder, a Qualified Bidder. Any party holding a perfected security interest in the Assets who may seek to participate in the Auction by placing a credit bid at the Auction must also be a Qualified Bidder and submit their bid by the Bid Deadline. |
| **Bid Deposit** | Each Qualified Bidder is required to deposit with the Debtor a cash deposit equal to the higher of 10% of the cash consideration of the purchase price (any such deposit, a "Good Faith Deposit"). |

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Determination of Qualified Bids** | The Debtor will determine whether a bid received from a Potential Bidder for the Assets constitutes a Qualified Bid and whether a Potential Bidder that submits such a bid will be considered a Qualified Bidder. The Debtor will advise each Potential Bidder whether they are deemed to be a Qualified Bidder and whether their bid is a Qualified Bid before the Auction. |
| **Considerations in Comparing and Valuing Bids** | The Bidding Procedures detail certain bid information to be considered in comparing the value of proposed bids. These considerations, fully detailed in the Bidding Procedures, will aid the Debtor in determining whether the terms of a particular bid for the Assets are materially more burdensome or conditional than the terms of another bid. These considerations are aimed at uncovering the bid that is highest and/or best based on the Debtor's business judgment. |
| **Auction** | If the Debtor receives at least two Qualified Bids (including the Stalking Horse Bid) for the Assets, the Debtor will conduct an Auction. |
| **Time, Place and Conduct of an Auction** | If necessary, an Auction will take place at the offices of Kaplan Johnson Abate & Bird LLP at 10:00 a.m. (Eastern Time) on October 1, 2026 If only the Stalking Horse Bid is received, the Auction for the Assets will be cancelled, and the Stalking Horse Bid will be designated the Successful Bid (as defined below) for the Assets. |
| **Baseline Bids** | If more than one Qualified Bid (including the Stalking Horse Bid) is received and thus an Auction is necessary, the Debtor will select what it determines to be the highest or best Qualified Bid (the "Baseline Bid") for the Assets to serve as the starting point at the Auction. At least one business day prior to the Auction, the Debtor will provide copies of the Baseline Bid to all Qualified Bidders. |

| **PROVISION** | **SUMMARY DESCRIPTION** |
|---|---|
| **Rules of the Auction** | The Debtor may at any time adopt rules for the Auction that the Debtor reasonably determines to be appropriate to promote the goals of the bidding process, including one or more adjournments of the Auction. The rules of the Auction will be announced at the outset of the Auction. |
| **Bidding at the Auction** | At the Auction, participants will be permitted to increase their initial Qualified Bids and improve their terms; *provided*, *however*, any such increased or improved bid must be a Qualified Bid (except that the Bid Deadline will not apply). If the Baseline Bid is the Stalking Horse Bid, the initial overbid shall exceed the Baseline Bid by the amount of the Break-up Fee plus $25,000 (the "Initial Overbid"). Any successive bid shall be made in increments valued at not less than $25,000. For the purpose of evaluating the value of the consideration provided by additional bids, the Debtor will take into account the Stalking Horse Protections payable to Stalking Horse Bidder. |
| **Designation of Successful Bid and Alternate Bid(s)** | After determining which Qualified Bid represents the best bid for the Assets the Debtor will designate such as the "Successful Bid" and the bidder as the "Successful Bidder." As described in the Bidding Procedures, the Debtor may also determine, in its reasonable business judgment which Qualified Bid is the next best bid for the Assets (the "Alternate Bid"). |
| **Acceptance of Successful Bids** | The Debtor will be deemed to have accepted a Successful Bid only when an asset purchase agreement has been executed and such bid has been approved by entry of the applicable Sale Order. If a Successful Bidder does not close the applicable Sale Transaction contemplated by the applicable Successful Bid by the date agreed to by the Debtor and such Successful Bidder, then the Debtor will be authorized, but not required, to close with the party that submitted the Alternate Bid, pursuant to the applicable Sale Order. |

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Successful Bid Notice** | Following the designation of a Successful Bid, the Debtor will file a notice of the Successful Bid, (a "Successful Bid Notice"). |
| **Sale Hearing and Objections** | Parties must file any objections to the approval of the Sale Transaction no later than 7 days prior to Sale Hearing. At the hearing to approve the Sale Transaction (the "Sale Hearing"), the Debtor will seek the entry of the Sale Order approving, among other items, the sale of the Assets to the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid agreement. The Sale Hearing may be adjourned or rescheduled by the Debtor in its discretion without notice or with limited and shortened notice to parties. |
| **Return of Good Faith Deposit** | The Good Faith Deposits will be held in escrow by Debtor's counsel and while held in escrow will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to further order of the Court or upon a breach by a Successful Bidder of the Successful Bid agreement. The Debtor will retain the Good Faith Deposit of the Successful Bidder until the closing of the Sale Transaction unless otherwise ordered by the Court. The Good Faith Deposits of the other Qualified Bidders, with the exception of the Good Faith Deposits of any Alternate Bidders, will be returned on the fifth business day following the entry of the Sale Order. At the closing of the Sale Transaction, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit against the cash purchase price. The Good Faith Deposits of any Alternate Bidders will be returned on the fifth business day following the closing of the Sale Transaction. |

| PROVISION | SUMMARY DESCRIPTION |
|---|---|
| **Modification of Bidding Procedures** | The Debtor may amend the Bidding Procedures or the bidding process at any time, and from time to time, in any manner that it determines in good faith will best promote the goals thereof, including extending or modifying any of the dates described therein or the information and material required from Qualified Bidders. |

## Basis for Relief Requested

### A. The Sale and the Bidding Procedures are a Proper Exercise of the Debtor's Business Judgment and will Maximize the Value of the Proposed Purchased Assets for the Benefit of the Debtor's Estate and Creditors

Entry of the Sale Order approving the final sale of the Assets at the conclusion of the Sale Hearing is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See*, *e.g.*, *In re EaglePicher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

The key consideration is this Court's finding that a good business reason exists for the sale. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *see also*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999).

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors, and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Walter*, 83 B.R. 14, 19-20 (9th Cir. Bankr. 1988), citing *In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983).

Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bonier. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

In light of circumstances that precipitated the commencement of this Chapter 11 Case, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate. Several sound business reasons support the Debtor's position.

A sale of the Assets preserves the Debtor's estate because it reduces administrative claims and costs and provides a more immediate return to creditors. The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer for the Assets. The Bidding Procedures provide potential bidders an opportunity to perform due diligence. Competing bidders will have the opportunity to bid at the Auction (if they become Qualified Bidders, as defined in the Bidding Procedures), thus ensuring that the sale of the Assets will be effected through an arm's-length transaction. Accordingly, the proposed auction procedure will allow the highest or best bidder to purchase the Assets, thereby maximizing the return to the Debtor's estate.

The Debtor believes that the Bidding Procedures for the Auction are commercially reasonable and are in the best interest of the Debtor, its estate and creditors and will maximize the value obtained from the sale of the Assets. The sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986). Consequently, the fairness and reasonableness of the consideration to be received by the Debtor will ultimately be

demonstrated by a "market check" through the auction process, which is the best means for establishing whether a fair and reasonable price is being paid.

In addition, all creditors and parties-in-interest will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth herein. Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's known creditor constituencies, those parties most interested in this Chapter 11 Case, those parties potentially interested in bidding on the Assets, and others whose interests are potentially implicated by a proposed sale. Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtor and its creditors.

Finally, the timing of the sale is critical. Debtor has incurred administrative expenses at an alarming rate for a case of this size. While the sale does not eliminate the accumulation of administrative expenses, it reduces the overall litigation regarding the value and size of the estate. For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**B. Ability to Designate a Stalking Horse Bidder**

To incentivize potential bidders and thereby maximize the potential value of the Assets for the benefit of the Debtor's estate, the Debtor requests that the Cherneys be designated as the Stalking Horse Bidder in connection with the proposed sale of the Assets. The ability to designate a Stalking Horse Bidder will provide the Debtor with an additional tool to ensure the sale process results in the best possible outcome for the Debtor and its estate.

### C. The Stalking Horse Protections Have a Sound Business Purpose and Should Be Approved

It is appropriate to provide the Stalking Horse Bidder with the proposed Stalking Horse Protections. The anticipated Stalking Horse Protections would provide for a Break-Up Fee of $6,000.00 under the Stalking Horse Agreement and an initial overbid in the amount of the Break-Up Fee plus $25,000. A Stalking Horse Bidder would receive payment of the Break-Up Fee upon the consummation of a transaction other than with the Stalking Horse Bidder. Based on market standards the Debtor believes the Stalking Horse Protections are necessary to induce the Cherneys to be a Stalking Horse Bidder. A Stalking Horse Bidder benefits the estate by ensuring the Debtor will receive a minimum amount of consideration for the Assets, while, at the same, giving the Debtor an opportunity to increase the consideration that its estate will receive for those assets. In addition, the Debtor believes that a Stalking Horse Bidder will benefit the estate by establishing a baseline value for the Assets and potentially attract other potential buyers.

Approval of the Stalking Horse Protections to the Stalking Horse Bidder is governed by standards for determining the appropriateness of Stalking Horse Protections in the bankruptcy context. Courts have identified at least two instances in which Stalking Horse Protections may benefit the estate. First, a break-up fee may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 533 (3d Cir. 1999). Second, if the availability of a break-up fee were to induce a bidder to research the value of the Assets and convert the value to a dollar figure on which

other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the Assets is sold will reflect its true worth. *Id*.

In *O'Brien*, the court reviewed the nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee. Such factors are as follows:

(a) the presence of self-dealing or manipulation in negotiating the break-up fee;

(b) whether the fee harms, rather than encourages, bidding;

(c) the reasonableness of the break-up fee relative to the purchase price;

(d) whether the unsuccessful bidder placed the estate property in a "sales configuration mode" to attract other bidders to the auction;

(e) the ability of the request for a break-up fee to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;

(f) the correlation of the fee to a maximum of value of the debtor's estate;

(g) the support of the principal secured creditors and creditors' committees of the break-up fee;

(h) the benefits of the safeguards to the debtor's estate; and

(i) the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

*See O'Brien*, 181 F.3d at 536.

The Stalking Horse Protections fall squarely within the applicable *O'Brien* factors. For example, such protections would assist the Debtor in securing an adequate floor for the Assets and, thus, require that competing bids be higher or otherwise better than the Stalking Horse Bid and attract other potential buyers to bid for the Assets subject to the Stalking Horse Agreement— a clear benefit to the Debtor's estate. Without the ability to offer the Stalking Horse Protections, the Debtor may lose the opportunity to obtain the highest or best offer for

the Assets and the associated downside protection that the existence of the Stalking Horse Bidder affords.

In sum, the proposed Stalking Horse Protections are reasonable and appropriate in light of the size and nature of the proposed Sale Transaction and the efforts that will be expended by any potential Stalking Horse Bidder. The Debtor's ability to offer the Stalking Horse Protection to induce the involvement of the Stalking Horse Bidder, enables it to ensure the sale of the Assets at a price they believe to be fair, while, at the same time, providing it with the potential of even greater benefit to the estate.

### D. This Court Should Approve the Sale Free and Clear of all Liens, Claims, and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code

The Debtor also requests that the Sale Order provide that the sale of the Assets is free and clear of any interest held by any third party in any of the assets to be sold. Specifically, it is contemplated that upon the closing, the Stalking Horse Bidder (or such other Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) will take title to and possession of the Assets, free and clear of all liens, claims, interests, and encumbrances, except as otherwise provided in the Stalking Horse Agreement or such other Asset Purchase Agreement.

Section 363(f) of the Bankruptcy Code authorizes the sale of property under section 363(b) of the Bankruptcy Code to be free and clear of interests in such property held by an entity if:

a. Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

b. Such entity consents;

c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d. Such interest is in bona fide dispute; or

e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

Liens will attach to the sales proceeds with the same validity and priority that exists under state law pursuant to section 363(e) of the Bankruptcy Code.

The sale of the Assets pursuant to the Bidding Procedures will satisfy section 363(f) of the Bankruptcy Code because any entities holding liens, claims, interests, or encumbrances against the Assets will have received notice of the Sale. All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the Sale of the Purchased Assets should be deemed to have consented. See *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims, and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, 2003 WL 21755006, at *2

(Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As such, the sale of the Assets may be free and clear of all liens, claims, interests, and encumbrances except any liabilities expressly assumed by the Stalking Horse Bidder (or other Successful Bidders), thus satisfying section 363(f)(2) of the Bankruptcy Code.

Moreover, a sale of the Assets free and clear may proceed pursuant to section 363(f) of the Bankruptcy Code because creditors with an interest in the sale assets can be compelled to accept money satisfaction of their claims pursuant to section 363(f)(5) of the Bankruptcy Code. *See Scherer v. Fed. Nat'l Mortgage Assoc. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993) (holding that pursuant to section 363(f)(5) of the Bankruptcy Code courts may authorize sales free and clear of a secured creditor's lien if such creditor's interest could be crammed down pursuant to section 1129(b)(2) of the Bankruptcy Code); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (same). Therefore, this Court may authorize the sale pursuant to section 363(f)(5) of the Bankruptcy Code.

The Debtor also believes that other provisions of section 363(f) of the Bankruptcy Code may be applicable to and would permit the sale of the Assets. Thus, the sale of the Assets is appropriately free and clear of all liens, claims, interests, or encumbrances pursuant to section 363(f) of the Bankruptcy Code.

**E. The Stalking Horse Bidder (or such other Successful Bidder(s)) Should be Entitled to the Protections of 363(m) of the Bankruptcy Code**

The Debtor seeks the protections afforded under section 363(m) of the Bankruptcy Code, which provide, in pertinent part:

> (m) The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such

> authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. 363(m).

The Debtor submits that the Sale of the Assets to the Stalking Horse Bidder, if any, (or such Successful Bidder(s) as may be selected in accordance with the Bidding Procedures) warrants a finding that the Assets were acquired in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Debtor has and will continue to market the Assets. Any parties who have expressed any meaningful interest in acquiring the Assets will be given notice of the Sale. No subjectivity in evaluating bids will be at issue. The highest or best bidder will purchase the Assets, subject to the terms of the Bidding Procedures.

Accordingly, the Sale Order will include a provision that the Stalking Horse Bidder (or such Successful Bidder(s) for the Assets) is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtor believes that providing such protection will ensure that the maximum price will be received by the Debtor for the Assets and closing of the Sale will occur promptly.

### F. The Proposed Notice of the Sale Hearing is Adequate and Appropriate

Under Bankruptcy Rule 2002(c), notice of the Sale Hearing must include the date, time, and place of the potential Auction and the Sale Hearing, and the deadline for filing any objections to the relief requested in this Sale Motion. As noted above, the Debtor proposes the following deadlines for objecting to the approval of the proposed Sale Transaction: no later than seven (7) days prior to the Sale Hearing (the "***Objection Deadline***") for all objections to the potential Sale Transaction, the terms contained in this Sale Motion and the proposed Sale Order.

Within five (5) business days after entry of the Bidding Procedures Order, the Debtor will serve the proposed Auction and Hearing Notice by overnight mail on all parties in interest who have executed a confidentiality agreement and been granted access to the Data Room, all creditors listed on the Debtor's Schedules, all parties who have appeared in the case, and the United States Trustee.

As Bankruptcy Rule 2002(c) requires, the Auction and Hearing Notice will include (among other things) the following: (a) the proposed date, time, and place of the Auction and the Sale Hearing; (b) information about the Assets and the sale process; and (c) the Objection Deadline for filing any objections to the relief requested in this Sale Motion. The methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Assets.

**G. Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

The Debtor requests that, upon entry of a Sale Order, the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale Transaction to close as soon as possible and prevent further delay in the administration of these cases. In addition, because the Assets impose holding costs on the Debtor during their period of ownership and control, any delay in closing may diminish the Debtor's estate to the detriment of creditors. Thus, the Debtor respectfully submits that a waiver of the 14-day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate under the circumstances.

**<u>NO PRIOR REQUEST</u>**

No prior request for the relief sought in this Sale Motion has been made to this or any other Court in connection with this Chapter 11 Case.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the Bidding Procedures Order substantially in the form attached hereto as **Exhibit A**; (ii) after a Sale Hearing, enter the Sale Order substantially in the form attached hereto as **Exhibit C** approving the sale of the Assets to the Successful Bidder; and (iii) grant such other and further relief to the Debtor as the Court may deem proper.

Respectfully submitted,

*/s/ Charity S. Bird*

CHARITY S. BIRD
**Kaplan Johnson Abate & Bird LLP**
471 W. Main Street, Suite 203
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
*Counsel for Debtor*

**Certificate of Service**

I certify that on August 28, 2026, a true and correct copy of the foregoing *Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sale Procedures, (B) Scheduling an Auction and Sale Hearing, and Approving the Form and Manner of Notice Thereof, and (C) granting related relief* was delivered to all parties who requested notice in the above-captioned case by either: (1) electronic means through the Bankruptcy Court's CM/ECF system; or (2) first-class U.S. Mail if the Notice of Electronic Filing from the Bankruptcy Court's CM/ECF system indicates that there are interested parties not deemed to have consented to electronic notice or service.

*/s/ Charity S. Bird*

CHARITY S. BIRD