# EXHIBIT E

## STALKING HORSE BID

*Via Email and US First Class Mail*

August 7, 2026

Better Bath Better Body LLC
c/o Jason Clegg, Member
10200 Forest Green Blvd., Suite 112
Louisville, KY 40223
jason@betterbathbetterbody.com

Re: *In re Better Bath Better Body LLC,* Case No. 26-31525
Proposal to Purchase Substantially All Assets of Debtor

Dear Mr. Clegg:

This letter summarizes the principal terms of a non-binding proposal and statement of interest ("**SOI**") by Debra Cherney and Marvin Cherney, individuals, or one of their affiliates or a new entity to be formed in connection herewith (collectively, "**Buyer**"), to acquire substantially all of Debtor's assets (the "**Assets**") of Better Bath Better Body LLC, a Kentucky limited liability company ("**Debtor**"), and certain specified liabilities of Debtor utilized in the operation of the bath soaps manufacturing and retail business located at 10200 Forest Green Blvd., Suite 112, Louisville, KY 40223 (the "**Business**"). The possible acquisition of the Business and the Assets selected by Buyer is referred to as the "**Transaction**." Buyer and Debtor shall hereinafter be referred to individually as a "**Party**" and collectively as the "**Parties**."

1. **ACQUISITION OF ASSETS.**

(a) Subject to the satisfaction of the conditions described in this SOI, at the closing of the Transaction, Buyer would acquire substantially all of Debtor's Assets related to the Business along with the assumption of certain specified liabilities of Debtor, debt free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363, including any successor liability claims, at the Purchase Price (set forth in **Section 2**).

(b) Assets include, but are not limited to, all of Debtor's:

(a) accounts receivable;

(b) inventory, including raw materials, supplies or spare parts, works in progress, and finished goods inventories, wherever located;

(c) furniture, fixtures and equipment, including but not limited to company vehicles, tools, office supplies and furniture, copy machines, telephones and related equipment, storage facilities, and computer hardware and software;

(d) leasehold improvements to the extent not fixtures;

(e) licenses, permits, consents, authorizations, and approvals of any

federal, state, or local regulatory, administrative, or other governmental agency or body, or third party, to the extent the same can be sold, transferred, or assigned by Debtor;

(f) customer agreements, customer lists, vendor and supplier lists, equipment service logs and maintenance information, equipment manufacturer's service manuals and bulletins (if any), books and records, and all other relevant financial and business information of the Business;

(g) all registered and unregistered intellectual property rights, including those, if any, to logos, trademarks, including the registered trademark "Better Bath Better Body," service marks, copyrights, trade secrets, know-how, technical information, all drawings and engineering specifications, software, databases, domain names, websites, social media accounts and network profiles and pages, telephone/telefax numbers, email addresses, and all trade names, including "Better Bath Better Body," as have been obtained expressly and solely for use by the Business and intellectual property owned by the Business;

(h) advertising and promotional materials utilized by the Business;

(i) prepaid expenses and deposits made to or by the Business;

(j) rights and privileges under any and all contracts entered into by Debtor in the ordinary course of business, including warranties, indemnities, and similar rights against third parties, related to or necessary for the conduct of the Business and agreed to by Buyer as of the Closing Date;

(k) assets involved with or otherwise connected to the Amazon storefront (a.k.a. the Amazon Seller Central Account), including, but not limited to, the brand registry listing, A+ content, brand store, product listings, analytics and tools, and inventories;

(l) goodwill and going concern value associated with the Business and the trade names listed above; and

(m) all other assets, properties, and rights associated with the Business of every kind and nature owned or held by Debtor or in which Debtor has an interest, known or unknown, fixed or unfixed, choate or inchoate, accrued, absolute, contingent, or otherwise, not otherwise specifically referred to in this Agreement, which relate to the Business.

(c) Excluded Assets. Notwithstanding the foregoing, Debtor shall retain all interests it may have in the following assets: (i) all cash and cash equivalents; (ii) any other assets of Debtor that Buyer elects to exclude by providing written notice to Debtor prior to the rejection deadline under Section 365 of the Bankruptcy Code; (iii) any contracts and/or leases not specifically assumed by Buyer; (iv) records Debtor is required to retain by law; (v) the Amazon Seller Central Account; and (vi) any other specified assets mutually agreed upon by the Parties.

2. **PURCHASE PRICE.** The "**Purchase Price**" for the Assets shall be One Hundred Thousand and 00/100 Dollars ($100,000.00) to be paid in immediately available funds at closing.

3. **TERMINATION FEES.** The Definitive Agreement shall provide for: (i) a break-up fee in the amount of $6,000.00 ("**Break-up Fee**"); Debtor agrees to file a motion (in form and substance acceptable to Buyer) with the Bankruptcy Court seeking approval of bid procedures for the sale of Debtor's Assets within seven (7) business days of the date of execution hereof, including approval of the Break-up Fee.

4. **DEBT ASSUMPTION.** Buyer has calculated the Purchase Price based on information provided by Debtor and the assurance that the assets will be sold free and clear of liens, claims, and interests. Except as expressly provided in the Definitive Agreement, Buyer shall not assume, or in any way be liable or responsible for, any debts, claims against, liabilities or obligations of Debtor or the Business. To the extent the transfer of the Assets requires the assumption and assignment of executory contracts, if any, and with respect to such contracts, Buyer may, in its sole discretion, agree on which executory contracts are to be assumed by and assigned to it, or, if necessary, rejected by Debtor in connection with the closing of the Transaction. In such event, Debtor shall use its best efforts to obtain approval from the Bankruptcy Court of the assumption and assignment of any such executory contracts that Buyer elects to assume, if any, on terms and conditions satisfactory to Buyer in its sole and absolute discretion. No contracts will be assumed and assigned unless explicitly agreed upon by Buyer and explicitly scheduled on the Definitive Agreement.

5. **PROPOSED DEFINITIVE AGREEMENT.** The Transaction shall be subject to negotiation and execution of a definitive, final, duly executed, and Bankruptcy Court approved asset purchase agreement relating to Buyer's acquisition of the Assets, to be drafted by Buyer's counsel (the "**Definitive Agreement**"). The Definitive Agreement shall include the terms summarized in this SOI and such other representations, warranties, conditions, covenants, indemnities, and other terms that are customary for transactions of this kind and are not inconsistent with this SOI. The Transaction shall also be subject to negotiation and execution of definitive ancillary agreements to be drafted by Buyer's counsel, including, but not limited to (a) an escrow agreement, (b) a bill of sale, (c) assignment and assumption agreements for assigned contracts and intellectual property, (d) noncompetition agreements for Debtor and Debtor's principals; and (e) employment agreement(s) for principals and/or key employees of the Business (collectively, the "**Ancillary Agreements**").

6. **CONDITIONS.** Buyer's obligation to close the proposed Transaction will be subject to customary conditions, including:

(a) Buyer's satisfactory completion of due diligence;

(b) the members and managers, if any, of Buyer and Debtor approving the Transaction;

(c) execution by both Parties of the Definitive Agreement, the Ancillary Agreements, and such other customary closing certificates and documentation;

(d) the receipt of any regulatory approvals and third-party consents, on terms

satisfactory to Buyer;

(e) Debtor filing motion and proposed form of order (each in form and substance acceptable to Buyer) for approval of the Definitive Agreement pursuant to 11 U.S.C. § 363, and such other documents as are required by the Bankruptcy Court and other parties-in-interest, obtaining Bankruptcy Court approval for the sale, and taking all actions necessary to obtain a prompt hearing and Bankruptcy Court approval of the sale;

(f) entry by the Bankruptcy Court of a final, no longer appealable Order authorizing and approving the Transaction and authorizing Debtor to consummate the Transaction with Buyer, in form and content satisfactory to Buyer, in its sole and absolute discretion;

(g) managers, directors, and/or key employees of Debtor chosen by Buyer, at Buyer's sole discretion, entering into employment agreements with Buyer on terms agreeable to Buyer;

(h) Debtor's principals and Debtor and affiliates entering into restrictive covenants, in a form acceptable to Buyer,;

(i) there being no material adverse change in the Business, results of operations, prospects, condition (financial or otherwise) or Assets of Debtor; and

7. **Employment and Management Services Arrangements.** The Definitive Agreement will afford Buyer the right to offer employment to principals and/or key employees of Debtor and shall require Debtor and management of Debtor to use reasonable best efforts to assist Buyer in determining whether to employ those individuals.

8. **Due Diligence.** From and after the date of this SOI, Debtor will authorize Debtor's management to allow Buyer and its advisors full access to Debtor's facilities, records, key employees, customers, suppliers and advisors for the purpose of completing Buyer's due diligence review. Provided that such access shall be coordinated, in advance, and done in the least disruptive manner to the business. The due diligence investigation will include, but is not limited to, a complete review of Debtor's financial, legal, tax, environmental, intellectual property and labor records and agreements, and any other matters as Buyer's accountants, tax and legal counsel, and other advisors deem relevant.

9. **Covenants of Debtor.** During the period from the signing of this SOI through the execution of the Definitive Agreement, Debtor will: (a) conduct the Business in the ordinary course in a manner consistent with past practice; (b) maintain its properties and other assets in good working condition (normal wear and tear excepted); and (c) use its best efforts to maintain the Business and employees, customers, assets and operations as an ongoing concern in accordance with past practice.

10. **Termination.** This SOI will automatically terminate and be of no further force and effect upon the earlier of: (a) execution of the Definitive Agreement by Buyer and Debtor; (b) mutual agreement of Buyer and Debtor; (c) the date Buyer notifies Debtor in writing that it has determined not to proceed with a Transaction; or (d) the date on which Debtor provides written notice of termination to Buyer. Notwithstanding anything in the previous sentence, **Sections**

**12(a), 12(b), 12(c), and 12(e)** of this SOI shall survive the termination of this SOI. Termination of this SOI shall not affect any rights any Party has with respect to the breach of this SOI by another Party prior to such termination.

11. **BID EXPIRATION.** The offer set forth in this SOI will remain in effect until 5:00 p.m., Eastern Standard Time, on August 18, 2026, unless accepted or rejected by Debtor or withdrawn by Buyer prior to that time.

12. **MISCELLANEOUS.**

(a) Governing Law. This SOI shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky without giving effect to any choice or conflict of law provision or rule (whether of the Commonwealth of Kentucky or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the Commonwealth of Kentucky.

(b) Jurisdiction. Each of the Parties irrevocably submits to the exclusive jurisdiction of the United States Bankruptcy Court, Western District of Kentucky (the "**Bankruptcy Court**"), for the purposes of any suit, action or other proceeding arising out of or relating to this SOI and the Transaction contemplated hereby, and to the non-exclusive jurisdiction of the Bankruptcy Court for the enforcement of any judgment obtained thereunder. Each of the Parties further agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth above shall be effective service of process for any action, suit or proceeding in the Bankruptcy Court with respect to any matters to which it has submitted to jurisdiction in this **Section 12(b)**. Each of the Parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in the Bankruptcy Court, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such Bankruptcy Court that any such action, suit or proceeding brought in any such Bankruptcy Court has been brought in an inconvenient forum.

(c) No Third-Party Beneficiaries. Except as specifically set forth or referred to in this SOI, nothing in this SOI is intended or shall be construed to confer upon any person or entity other than the Parties and their successors or assigns, any rights or remedies under or by reason of this SOI.

(d) Expenses. Except with respect to the Termination Fees, the Parties will each pay their own transaction expenses, including the fees and expenses of investment bankers and other advisors, incurred in connection with the proposed Transaction. For clarity, Debtor is not responsible for Termination Fees. Only a successful bidder who outbids the Buyer will be responsible for the Termination Fees.

(e) Severability. Any term or provision of this SOI that is held invalid or unenforceable by a Court in any situation shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse

to any Party.

(f) Amendment. No amendment of any provision of this SOI shall be valid unless the same shall be in writing and signed by both Parties.

(g) Waiver. No waiver by any Party of any provision of this SOI or any default or breach of covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party against whom the waiver is to be effective nor shall such waiver be deemed to extend to any prior or subsequent default or breach of covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence. It is further understood and agreed that no failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power, or privilege hereunder.

(h) Counterparts; Electronic Signatures. This SOI may be executed in multiple counterparts, each of which shall be deemed an original, all of which taken together shall constitute one and the same instrument. Signatures executed and/or delivered by electronic means shall be deemed to have the same effect as original signatures.

(i) Non-Binding Agreement. This SOI reflects the intention of the Parties, but for the avoidance of doubt, neither this SOI nor its acceptance shall give rise to any legally binding or enforceable obligation on any Party, except with regard to **Sections 6 through 10, and 12(c)** hereof. No contract or agreement providing for any transaction involving the Business or the Assets shall be deemed to exist between the Parties and any of their respective affiliates unless and until a final Definitive Agreement has been executed and delivered.

(j) Headings. The headings of the various sections of this SOI have been inserted for reference only and shall not be deemed to be a part of this SOI.

(k) Notices. All notices, demands and other communications to be given or delivered under or by reason of the provisions of this SOI shall be in writing and shall be deemed to have been given when: (i) personally delivered; (ii) one (1) business day after deposit with Federal Express or similar nationally recognized overnight courier service; or (iii) three (3) business days after being deposit with U.S. Mail, registered or certified, postage prepaid, return receipt requested to the address listed on the signature page hereto, with a copy delivered by electronic mail.

* * * * *

If you agree with the terms set forth above and desire to proceed with the proposed Transaction on that basis, please sign this SOI in the space provided below and return an executed copy to the attention of Neil C. Bordy, Seiller Waterman LLC, 462 S. 4th Street, Suite 2200, Louisville, KY 40202 (bordy@derbycitylaw.com).

Sincerely,

Signed by:
75E1656235894F6...
DEBRA CHERNEY

Signed by:
A7FBA75258ED48A...
MARVIN CHERNEY

Address: 2669 County Road J, Kewaunee, WI 54216

Email: debra.cherney@cherneyfoundation.org; marvin.cherney@cherneyfoundation.org

ACCEPTED BY DEBTOR:

BETTER BATH BETTER BODY LLC,
a Kentucky limited liability company

By: Signed by: Jason Clegg 236685A6C53E45B...
Jason Clegg, Member

Address: 10200 Forest Green Blvd., Suite 112, Louisville, KY 40223

Email: Jason@betterbathbetterbody.com

CC:

| | |
|---|---|
| Charity S. Bird<br>Kaplan Johnson Abate & Bird LLP<br>cbird@kaplanjohnsonlaw.com | Eric Scovill<br>Storehouse Wealth Management LLC<br>eric@storehouseassets.com |