UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| BETTER BATH BETTER BODY LLC | Case No. 26-31525-mbn |
| Debtor | Chapter 11 |

**ORDER (A) ESTABLISHING BIDDING AND SALE PROCEDURES, (B) SCHEDULING AN AUCTION AND SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (C) GRANTING RELATED RELIEF**

Upon consideration of the *Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sale Procedures,, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof and (C) Granting Related Relief* (the "***Sale Motion***")[1] seeking, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, an order: (a) approving proposed bidding and sale procedures attached as **Annex 1** to this Order (the "***Bidding Procedures***") and related Bid Deadline (as defined below) in connection with the sale or sales (collectively, the "***Sale Transaction***") of substantially all assets of the Debtor (the "***Assets***"); (b) approving the Statement of Interest received from Debra and Marvin Cherney as the "stalking horse" bidder (such Statement of Interest, a "***Stalking Horse Agreement***"), provide a break-up fee (the "***Break-Up Fee***") and an initial overbid in the amount of the Break-Up Fee plus $10,000 (the "***Initial Overbid***" and collectively with the Break-Up Fee, the "***Stalking Horse Protections***") related thereto; (c) approving the date, form and manner of notice of an auction of the Assets (the "***Auction***") and related Sale Hearing, including the form and manner of notices attached

[1] Capitalized terms used but not defined herein have the meanings given to them in the Sale Motion.

to the Sale Motion as Exhibit B (the "***Auction and Hearing Notice***"); and (d) granting certain related relief as described in the Sale Motion; and the Bankruptcy Court having considered the statements of counsel and the evidence presented at the hearing on the Sale Motion;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157 and 1334 and may enter a final order on the Sale Motion consistent with Article III of the United States Constitution. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. The Debtor has demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and thereby (i) approve of the Bidding Procedures; (ii) set the dates of the Bid Deadline, Auction (if needed) and Sale Hearing; and (iii) establish notice procedures and approve the forms of notice.

C. The Debtor has demonstrated and proven to the satisfaction of this Court that providing the Stalking Horse Protections to a Stalking Horse Bidder represents a prudent exercise of the Debtor's business judgment.

D. The Bidding Procedures are reasonable and appropriate. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets. As such, the Bidding Procedures are supported by, and constitute a proper exercise of, the Debtor's business judgment.

E. The Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtor's estate and creditors.

F. The payment of the Break-Up Fee, under this Order and upon the conditions set forth in the Bidding Procedures, is: (i) an actual and necessary cost of preserving the Debtor's estate, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, and, therefore, a benefit to the Debtor's estate and creditors and all parties in interest herein; and (iii) reasonable and appropriate under the circumstances.

G. The proposed notice of the Auction, the Sale Hearing, and the Bidding Procedures (including, without limitation, the Stalking Horse Protections), as set forth in the Sale Motion and this Order, are appropriate and sufficient and are reasonably calculated to provide all interested parties with timely and proper notice thereof, and no other or further notice to creditors shall be required in connection with these matters or the proposed Sale Transaction.

H. Good and sufficient notice of the relief granted herein has been given under the circumstances, and a reasonable opportunity to object, or to be heard, regarding the relief granted herein was afforded to all interested persons and entities.

I. Entry of this Order is in the best interests of the Debtor and its estate, creditors and interest holders and all other parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Sale Motion is GRANTED.

2. All objections to the entry of this Order or to the relief provided herein that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled on the merits without prejudice. Parties are permitted to file objections to the sale in accordance with Paragraph 16 of this Order.

3. Causes of action, if any, under Chapter 5 of the Bankruptcy Code are not and shall not be offered for sale under this Order. Cash equivalents, including, but not limited to, Debtor's account with Amazon, Shopify, and PayPal, are not and shall not be offered for sale under this Order.

4. The Bidding Procedures, attached hereto as **Annex 1**, are hereby approved in all respects and will govern all bids and bid proceedings relating to the Assets. Any person or entity seeking to participate as a Qualified Bidder at the Auction shall comply with the Bidding Procedures. The Debtor and its professionals and agents are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

5. The deadline for submitting a Qualified Bid shall be **November 9, 2026 at 5:00 p.m. (Eastern Time)** (the "***Bid Deadline***"). The Bid Deadline may be modified as set forth in the Bidding Procedures.

6. Any Auction, if necessary, shall take place at **Kaplan Johnson Abate & Bird LLP, 471 W. Main Street, Suite 203, Louisville, Kentucky 40202 at 10:00 a.m. (Eastern Time) on November 12, 2026**, or such other time and place as the Debtor may determine. The Auction may be rescheduled as set forth in the Bidding Procedures. At the conclusion of the Auction, if any, or in the event an auction is not necessary, Debtor shall file with the Court its proposed allocation of the proceeds on or before November 14, 2026.

7. At the request of the Debtor, each bidder participating at the Auction shall be required to confirm in writing that (a) it has not engaged in any conduct of the type described

in section 363(n) of the Bankruptcy Code with respect to the bidding process and (b) its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

8. The Bankruptcy Court will conduct the Sale Hearing on **November 23, 2026 at 9:00 (Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time the Bankruptcy Court shall consider approval of the Sale Transaction to the Successful Bidder and the entry of the Sale Order. The Debtor in its discretion may adjourn or reschedule the Sale Hearing without notice, including by (a) an announcement of such adjournment at the Sale Hearing or at an Auction or (b) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing (which may be included in a hearing agenda letter).

9. Within two (2) business days after entry of this Order, the Debtor shall serve the proposed Auction and Hearing Notice substantially in the form attached to the Sale Motion as Exhibit B by overnight mail to those parties in interest who have executed a confidentiality agreement and been granted access to the Data Room, all creditors listed on the Debtor's Schedules, all parties who have appeared in the case, and the United States Trustee.

10. Debtor is hereby granted the authority to provide a Break-Up Fee in an amount of $6,000.00 included in the Stalking Horse Agreement, to establish an initial overbid in the amount of the Break-Up Fee plus $10,000, and minimum bid increments in the amount of $10,000, in the Debtor's discretion. In the event that a sale is consummated pursuant to a transaction other than with any Stalking Horse Bidder (an "***Alternate Transaction***"), then the Debtor shall pay the Break-Up Fee to the Stalking Horse Bidder, if there is one, by wire

transfer of immediately available funds from the proceeds of the applicable Alternate Transaction immediately upon the consummation thereof.

11. Debtor shall retain sufficient proceeds from the sale of the assets for the payment of U.S. Trustee quarterly fees resulting from the transaction, and reserve for professional fees including those incurred by any Committee appointed, the prior sub-v trustee, and Debtor's counsel in accordance with any carve-outs previously agreed to by the cash collateral creditor, the SBA, and any other agreement with secured creditors.

12. Any party holding a first priority perfected security interest in the Assets shall have all rights to credit bid all or a portion of their claim as secured by the Assets, at the sale, transfer, conveyance, Auction, or any other disposition of the Assets. In addition, any party holding a first perfected security interest in the Assets shall have all rights to obtain an appraisal at its own expense.

13. In the event any party's credit bid is the highest and best bid for the Assets and is equal to or less than the indebtedness due and owing to said party, such party or any designated assignee shall be deemed the owner of the applicable Assets upon entry of the Court's Sale Order.

14. In the event any party's credit bid is the highest and best bid for the Assets and is greater than the indebtedness due and owing to said party, then such amount shall be credited towards the bid amount with the remainder due and owing to the Debtor at the closing of the sale of the Assets.

15. In the event a party purchases all of the Assets at the Auction by credit bid, such party shall pay the Debtor in cash, regardless of the amount of proceeds actually paid, such amount as is necessary to pay the Break-Up Fee (as provided for in the Stalking Horse

Agreement), if any, to the Stalking Horse Bidder following the Court's entry of the Sale Order. It being intended that creditors of individual assets that purchase by credit bid of their particular asset will not be required to pay the Break-Up Fee.

16. All objections to approval of the Sale Transaction, including the sale of the Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, and the form of the Sale Order must be in writing, state the basis of such objection with specificity, comply with the Bankruptcy Rules, be filed with this Court, and served on all creditors listed on the Debtor's Schedules, all parties who have appeared in the case, and the United States Trustee (collectively, the "***Objection Notice Parties***") on or before November 18, 2026 (the "***Objection Deadline***"). Any responses to the Objections shall be filed on or before November 20, 2026.

17. Following the designation of a Successful Bid, the Debtor shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "***Successful Bid Notice***"). The Successful Bid Notice shall include a proposed allocation of the proceeds and shall be filed with the Court after designation of a Successful Bid.

18. A party that fails to timely file an objection to a proposed sale by the Objection Deadline shall be (a) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable Sale Transaction and (b) deemed to have consented to entry of the Sale Order and consummation of the Sale Transaction, including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

19. The form of the Auction and Hearing Notice attached to the Sale Motion as Exhibit B and the manner of service or publication described herein (a) are hereby approved

in all respects and (b) are determined to be appropriate and sufficient for all purposes. The Debtor shall be permitted to make non-substantive revisions to the Auction and Hearing Notice, consistent with the Bidding Procedures and this Order.

20. No other or further notice of the Sale Motion, this Order, the Bidding Procedures, the sale of the Assets, the Auction, the Successful Bidders, or the Sale Hearing shall be required; however, Debtor has agreed to submit a supplemental Affidavit detailing additional notice, marketing and advertising regarding the sale of Debtor's assets, and to as part of the Debtor's Sale Motion the Debtor will provide detail as to what additional notice, marketing and advertising regarding the sale of the Debtor's assets were actually done. As a result, parties including any committee if any appointed are not waiving the ability to challenge the sufficiency of the advertising and marketing at the Sale Hearing.

21. All parties (whether or not Qualified Bidders) that participate in the bidding process (including any Auction) shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Sale Motion or this Order (including any disputes relating to the bidding process, the Auction and/or the Sale Transaction) to the extent that it is later determined that the Bankruptcy

22. Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and all parties have waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

23. This Order shall be immediately effective and enforceable upon its entry, and nothing in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 (to the extent applicable) shall cause a stay hereof.

24. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

25. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**Tendered By:**

*/s/ Charity S. Bird*
CHARITY S. BIRD
**Kaplan Johnson Abate & Bird LLP**
471 W. Main Street, Suite 203
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
*Counsel for Debtor*

*/s/ Peter M. Gannott*
PETER M. GANNOTT
**Gannott Law Group, PLLC**
10230 Shelbyville Road, Suite 6
Louisville, Kentucky 40223
Telephone: (502) 749-8800
Email:
*Counsel for Leaf Capital Funding, LLC*

**Agreed to By:**

*/s/ Katherine A. Bell*
KATHERINE A. BELL
**Assistant United States Attorney**
717 West Broadway
Louisville, Kentucky 40202
Telephone: (502) 582-5094
Email: Katherine.Bell@usdoj.gov
*Counsel for United States of America, on behalf of the U.S. Small Business Administration*

*/s/Amanda P. Thompson*
AMANDA P. THOMPSON
**Casey Bailey & Maines, PLLC**
3151 Beaumont Centre Circle
Suite 200
Lexington, Kentucky 40513
Telephone: (859) 243-0228
Email: athompson@cbmlaw.net
*Counsel for Pawnee Leasing Corporation*

*/s/ Jacob Kruer*
JACOB KRUER
**Weltman, Weinberg & Reis**
312 Elm Street, Suite 1200
Cincinnati, Ohio 45202
Telephone: (513) 333-4023
Email: jkruer@weltman.com
*Counsel for Toyota Industries Commercial Finance, Inc.*

**Have Seen:**

*/s/ Timothy E. Ruppel*
TIMOTHY E. RUPPEL
**Assistant United States Trustee and Trial Attorney for the Office of the United States Trustee**
601 West Broadway, Suite 512
Louisville, Kentucky 40202
Telephone: (502) 582-6050
Email: tim.ruppel@usdoj.gov

# Annex 1

## Bidding Procedures

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| In re: | |
| BETTER BATH BETTER BODY LLC | Case No. 26-31525-mbn |
| Debtor | Chapter 11 |

**BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSSETS**

By motion, the Debtor requested approval of (i) a process and procedures for, and authority to implement, a sale of substantially all of Debtor's assets (the "***Assets***") and (ii) the to provide Stalking Horse Protections (the "***Sale Motion***").

On **October 8, 2026** the Bankruptcy Court entered an order (the "***Bidding Procedures Order***"), which, among other things, authorized the Debtor to market and sell the Assets pursuant to the Bidding Procedures set forth below.

**Any interested bidder should contact, as soon as practical, the**
**<u>Debtor's counsel as set forth below</u>:**
**Kaplan Johnson Abate & Bird LLP, 471 W. Main Street, Suite 203 Attn: Charity Bird**
**(cbird@kaplanjohnsonlaw.com)**

These Bidding Procedures describe, among other items, (a) the Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of Successful Bidder and (e) the Bankruptcy Court approval of the sale of the Assets to the Successful Bidder.

1. **<u>Important Dates</u>**

The Debtor will:

(a) solicit interest from and assisting Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept bids seeking qualification as Qualified Bids (as defined below) until **November 9, 2026 at 5:00 p.m. (Eastern Time)** (the "***Bid Deadline***") or thereafter as permitted herein; and

(b) also do the following if they receive more than one Qualified Bid – (i) negotiate with the Qualified Bidders (as defined below) in preparation for the Auction; (ii) conduct the Auction at **Kaplan Johnson Abate & Bird LLP, 471 W. Main Street, Suite 203, Louisville, Kentucky, at 10:00 a.m. (Eastern Time) on November 12, 2026** (the "***Auction Date***"), or such other time or such other place as the Debtor may determine; and (iii) select, at the conclusion of the Auction, in their sole discretion which bidder or bidders have provided the highest or best offer(s) for the Assets in a single or multiple lots (each, a "***Successful Bidder***").

2. **Stalking Horse Protections**

The Bidding Procedures Order provides the Debtor with the authority to provide the following Stalking Horse Protections:

(a) a break-up fee of $6,000.00 contemplated in the Stalking Horse Agreement (the "***Break-Up Fee***"); and

(b) an initial overbid in the amount of the Break-Up Fee plus $10,000.

3. <u>**Participation Requirements**</u>

(a) **Interested Parties**:

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each an "***Interested Party***") must deliver the following (unless previously delivered) to counsel to the Debtor:

(i) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtor; and

(ii) a statement and other factual support demonstrating to the Debtor's reasonable satisfaction, that the Interested Party has a bona fide interest in purchasing the Assets (or some subset thereof). If the Debtor determines, after receipt of the items identified above, that an Interested Party has a bona fide interest in the Assets, no later than two business days after the Debtor makes that determination and has received all of the materials required above, such Interested Party will be deemed a "Potential Bidder" and the Debtor will deliver to such Potential Bidder the following items: (i) an electronic copy of any Stalking Horse Agreement, if one exists, and (ii) access information for the Debtor's confidential electronic data room concerning the Assets (the "***Data Room***"). The Debtor reserves the right, in its sole discretion, to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder.

**(c) Due Diligence**

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtor will provide any Potential Bidder such due diligence access or additional information a Potential Bidder requests and that the Debtor determines to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to Debtor's counsel. The Debtor, with the assistance of its counsel, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtor will simultaneously provide such materials to all Potential Bidders and any Stalking Horse Bidder, if one exists, by adding such information to the Data Room.

Unless otherwise determined by the Debtor, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline; or (ii) the bidding process is otherwise terminated.

4. **Qualified Bids**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "***Qualified Bid***," and for the Potential Bidder to be deemed a "***Qualified Bidder***."

(a) **Bid Deadline**

A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received by the Bid

Deadline, to Debtor's counsel (at the address listed above). The Debtor may extend the Bid Deadline in its sole discretion. If the Debtor extends the Bid Deadline, the Debtor will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

(b) **Bid Requirements**

All bids must include the following (the **"*Required Bid Documents*"**):

(i) a duly authorized and executed statement of interest, including the purchase price for the Assets, and the liabilities and obligations being assumed;

(ii) sufficient information, as defined by the Debtor, to allow the Debtor to determine that the Potential Bidder has the financial wherewithal to close the sale transaction, including, but not limited to written evidence of an unconditional commitment for financing from a reputable financing institution, evidence of sufficient cash, the posting of an unconditional, irrevocable letter of credit from a reputable financing institution issued in favor of the Debtor, a guaranty from another person or entity (with such person or entity providing evidence of their financial wherewithal) documented to the satisfaction of the Debtor, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtor along with contact information for a person whom the Debtor may contact to obtain additional information regarding the Potential Bidder's ability to consummate the transaction; and

(iii) in the case of a party submitting a credit bid, in the alternative to subpart (b)(ii) above, sufficient information, as defined by the Debtor, to allow the Debtor to determine that such party holds a perfected security interest in the Assets.

A bid will be considered only if the bid:

(i) identifies the Assets to be purchased;

(ii) sets forth the consideration for the assets to be purchased, identifying separately any cash and non-cash components;

(iii) is reasonably likely to be consummated, if selected as the Successful Bid, within a timeframe reasonably acceptable to the Debtor, which time frame shall include a closing by no later than **December 15, 2026**, and each Bid seeking to acquire all of the Debtor's assets that are the subject of the Stalking Horse Bid must have a Purchase Price that in the Debtor's reasonable business judgment has a monetary value equal or greater than the aggregate cash consideration, assumed liabilities, and other non-cash consideration contemplated by the Stalking Horse Bid, plus the Break-Up Fee, plus $10,000 (collectively, the "***Minimum Overbid***")**;** or at a minimum, each Bid seeking to acquire individual assets or combinations of assets that are less than all of the Assets (each a "***Partial Bid***") must have a Purchase Price that in the Debtor's reasonable business judgment has a value that satisfies the criteria for being a Qualified Bid;

(iv) is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

(v) provides evidence satisfactory to the Debtor, in its sole discretion, of the bidder's financial wherewithal and ability to consummate the transaction;

(vi) is accompanied by a deposit by wire transfer to Debtor's counsel's escrow account (the "***Deposit Agent***") equal to $10,000.00 (any such deposit, a "***Good Faith Deposit***") and includes a completed IRS Form W-8BEN-E or W-9 (as applicable);

(vii) sets forth the representatives who are authorized to appear and act on behalf of the bidder related to the contemplated transactions;

(viii) except for the Stalking Horse Bidder, indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement amount, or similar type of payment;

(ix) must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtor) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

(x) includes an acknowledgment that the Potential Bidder has not engaged in any collusion with respect to the Bidding Process and its

bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder;

(xi) discloses the identity of each entity and the control person of each entity that will be bidding or otherwise participating in connection with the bid; and

(xii) is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements. Notwithstanding the foregoing, the Stalking Horse Bidder shall be deemed a Qualified Bidder, and its Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with the Bidding Procedures. By submitting a bid, a Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures.

A credit bid received from any party holding a perfected security interest in the Assets will constitute a Qualified Bid only if it is received by the Bid Deadline and includes the acceptable documentation evidencing the perfected security interest.

The Debtor will advise each Potential Bidder whether they are deemed to be a Qualified Bidder and whether their bid is a Qualified Bid before the Auction. All Qualified Bids will be considered, but the Debtor reserves the right to reject any and all bids other than the highest or otherwise best bid as determined in the Debtor's sole discretion. Bids other than Qualified Bids will not be considered.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent

review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

5. **Auction**

In the event that the Debtor timely receives more than one Qualified Bid, the Debtor shall conduct the Auction of the Assets. The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids. The Auction will take place at Kaplan Johnson Abate & Bird LLP, 471 W. Main Street, Suite 203, Louisville, Kentucky 40202, at 10:00 a.m. (Eastern Time) on the Auction Date or such other time and place as the Debtor may determine.

Only representatives or agents of the Debtor, the U.S. Trustee's Office, secured creditors, the Committee, if any, the Stalking Horse Bidder, and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only the Stalking Horse Bidder, and Qualified Bidders will be entitled to make any subsequent bids at the Auction.

At least one business day prior to the Auction, the Debtor will provide copies of the Qualified Bid the Debtor believes is the highest or otherwise best offer (the "***Baseline Bid***") to the Committee, if any, and all Qualified Bidders that have informed the Debtor of their intent to participate in the Auction.

The Debtor, after consultation with the Committee, if any, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, *provided, however* such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code or any Order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder; and *provided further* that all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "***Subsequent Bid***") and (b) the Debtor determines that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Baseline Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets. Any successive bid shall be made in increments valued at not less than $10,000.

After the first round of bidding and between each subsequent round of bidding, the Debtor, after consultation with the Committee, if any, shall announce the bid that it believes to be the highest or otherwise best offer or combination of offers (as applicable, the "***Leading Bid***").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid. For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor may take into account the Break-Up Fee. For the purpose of

evaluating Subsequent Bids, the Debtor may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor in its sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

6. **Selection of Successful Bid**

The Debtor reserves the right, after consultation with the Committee, if any, to (i) determine in its reasonable discretion which Qualified Bid is the highest or otherwise best and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any bid or offer, other than a Stalking Horse Bid, any bid that the Debtor in their reasonable discretion deem to be (a) inadequate or insufficient, (b) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or herein or (c) contrary to the best interests of the Debtor and its estate.

The Debtor may take the following considerations into account when evaluating Qualified Bids: (a) the purchase price and valuation of non-cash consideration; (b) the overall value to be provided to the Debtor under the bid, including assumption of liabilities and the net economic effect upon the Debtor's estate; (c) the ability to obtain any and all necessary applicable regulatory approvals for the proposed Sale Transaction; (d) other contingencies and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtor, and any incremental costs to the Debtor as a result of potential closing delays; (e) whether a bid on all or substantially all of the Assets is more beneficial to the Debtor's

estate than individual bids on subsets of Assets (either separately or collectively), or vice versa; and (f) any other factors that the Debtor may deem relevant.

Prior to the conclusion of the Auction, the Debtor will, after consultation with the Committee, if any: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) identify the highest or otherwise best offer (the "***Successful Bid***"); (c) determine which Qualified Bid is the next highest or otherwise best offer (the "***Alternate Bid***") for the Assets; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the identity of the party that submitted the Successful Bid (the "***Successful Bidder***"), the amount and other material terms of the Successful Bid and the identity of the party or parties that submitted the Alternate Bid (the "***Alternate Bidder***").

The Debtor will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. Upon entry of the Sale Order, only a Stalking Horse Bidder or an entity or entities constituting the Successful Bidder shall be entitled to purchase the Assets pursuant to these Bidding Procedures.

If for any reason, the entity or entities that submit the highest or otherwise best Qualified Bid fails to consummate the purchase of the Assets, the Debtor is authorized to effect the sale of the Assets to the Alternate Bidder as soon as is commercially reasonable. If

such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtor reserves the right to seek all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement. Furthermore, the Debtor shall be entitled to retain the Good Faith Deposit thereof as part of its damages resulting from such breach of failure to perform.

7. **The Sale Hearing**

The Sale Hearing will be held before the Honorable Mary Elisabeth Naumann on **November 23, 2026 at 9:00 a.m. (Eastern Time) in the United States Bankruptcy Court for the Western District of Kentucky, 601 Broadway, Courtroom #3, Louisville, Kentucky 40202**. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtor will seek approval of the offer constituting the Successful Bid and, at the Debtor's election, the offer constituting the Alternate Bid.

The Debtor's presentation to the Bankruptcy Court of the offer constituting the Successful Bid and Alternate Bid will not constitute the Debtor's acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale Transaction to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtor or the Successful Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder upon which occurrence the Debtor has filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid will be deemed to be the Successful Bid and the

Debtor will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.

8. **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow and will not become property of the Debtor's bankruptcy estate unless released from escrow pursuant to further order of the Bankruptcy Court. The Debtor will retain the Good Faith Deposits of the Successful Bidder and the Alternate Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five business days of the entry of the Sale Order. At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Alternate Bidder will be released by the Debtor five business days after the closing of the Sale Transaction.

9. **As Is, Where Is**

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents or its estate except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

10. **Free and Clear of Any and All Interests**

Except as otherwise provided in a Successful Bidder's purchase agreement, all of the Debtor's rights, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and

interests thereon (collectively, the "***Interests***") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.

11. **<u>Modification of Bidding Procedures</u>**

The Debtor may amend these Bidding Procedures at any time, and from time to time, in any manner that it determines in good faith will best promote the goals of the Bidding Process, including, without limitation, extending or modifying any of the dates described herein or the information and materials required from Qualified Bidders.

Mary E. Naumann
United States Bankruptcy Judge
Dated: October 9, 2026