**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| In re: | |
| BETTER BATH BETTER BODY LLC | Case No. 26-31525-mbn |
| Debtor | Chapter 11 |

**NOTICE OF SUCCESSFUL BID**

Better Bath Better Body LLC (the "Debtor"), by counsel, files this Successful Bid Notice under paragraph 17 of the Court's *Order (A) Establishing Bidding and Sale Procedures, (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof and (C) Granting Related Relief* (the "Bid Procedures Order"). Doc. 120 ¶ 17. At the November 12, 2026 auction, the Debtor selected the bid of The Better Company, Inc. ("TBC") because of the collective representations TBC made at that time. TBC has not made any formal commitment to its representations. Debtor designated the bid of TBC as the Successful Bid based, in large part, on the representations made at the Auction. At the Sale Hearing, the Debtor will ask the Court to approve the sale of substantially all of its assets to TBC for $116,000.00. Capitalized terms not defined here have the meanings given in the Bid Procedures Order and the Bidding Procedures.

**Background**

1. On August 28, 2026, the Debtor moved to sell substantially all of its assets free and clear of liens (the "Sale Motion"). Doc. 84.

2. On October 9, 2026, the Court granted the Sale Motion and entered the Bid Procedures Order. The order approved Debra and Marvin Cherneys' (the "Cherneys")

Statement of Interest, which offers $100,000.00, as the Stalking Horse Agreement. Doc. 120 at 1, ¶ 1; Ex. A § 2. It authorized a $6,000.00 Break-Up Fee payable to the Cherneys from the proceeds of a sale to any other bidder, and it set the initial overbid at the Break-Up Fee plus $10,000.00. Doc. 120 ¶ 10. It also set the Sale Hearing for November 23, 2026 at 9:00 a.m. (Eastern Time). *Id.* ¶ 8. The Debtor has moved to continue the Sale Hearing. Doc. 135. This Court entered its Order continuing the Sale Hearing to December 8, 2026 at 11:00 a.m. Doc. 139.

3. Debtor marketed its assets as described in its declaration in support of the Sale Motion. Doc. 116. By the November 9, 2026 Bid Deadline, the Debtor received TBC's Qualified Bid in addition to the Stalking Horse Agreement. The Cherneys' Stalking Horse Agreement and TBC's bid are attached as Exhibit A and Exhibit B, respectively.

**The Auction**

4. The Debtor held the Auction on November 12, 2026. Doc. 138 ¶ 1. The Cherneys, TBC, Pawnee Leasing Corporation ("Pawnee"), the U.S. Small Business Administration (the "SBA"), and the Internal Revenue Service attended, with or through counsel. TBC bid $116,000.00, the minimum initial overbid, plus assumption of the Debtor's forklift lease with Toyota Industries Commercial Finance, Inc. (the "Toyota Lease"), and no higher bid was made. Doc. 138 ¶ 2; Doc. 120 ¶ 10; Ex. B § 4.

5. Debtor selected TBC's bid because of four representations TBC made at the Auction: (a) TBC would pay $116,000.00 in cash; (b) TBC would assume the Toyota Lease; (c) the business would remain in Kentucky; and (d) the Debtor's employees would remain with the business (together, the "Auction Representations"). TBC has declined to have the last two representations be binding upon it.

6. Only the first two Auction Representations appear in TBC's written bid. It contains no commitment about where TBC will operate the business, and it gives TBC only "the right to offer employment to key employees of Debtor." Ex. B § 7.

7. On November 14, 2026, as paragraph 6 of the Bid Procedures Order required, the Debtor filed its proposed allocation of the proceeds of TBC's bid, which identified TBC's bid as the winning bid. Doc. 138. The Court has not approved a sale to any bidder.

8. On November 16, 2026, the Debtor asked TBC to sign a declaration confirming the Auction Representations and agreeing that the order approving the sale (the "Sale Order") would make TBC's commitments on Kentucky operations and employees binding. TBC declined and instead provided that it intends to operate the business in Kentucky after closing and that it intends to offer employment to some of the employees. TBC goes on to make clear that neither of these intentions is binding on it. The declaration also included the two statements that paragraph 7 of the Bid Procedures Order requires each bidder to confirm in writing at the Debtor's request: that the bidder has not engaged in any conduct of the type described in 11 U.S.C. § 363(n) with respect to the bidding process, and that its bid is a good-faith, bona fide offer that it intends to consummate. Doc. 120 ¶ 7. Finally, it asked TBC to state the facts the Court needs to make the findings TBC's bid requires, including TBC's connections to the Debtor's creditors and the source of its funds. As of the time of this filing, Debtor did not have an executed Declaration to file herewith. Debtor will supplement the record if one is provided.

**The Two Bids**

9. TBC offers $116,000.00 and would assume the Toyota Lease, paying its cure amount at closing in addition to the price. Ex. B § 4. Because the Break-Up Fee is paid from

the proceeds of a sale to any bidder other than the Cherneys, TBC's price nets the estate $110,000.00. Doc. 120 ¶ 10; Doc. 138. The Cherneys offer was $100,000.00 and no Break-Up Fee is owed if they buy. TBC's bid therefore nets the estate $10,000.00 more in cash and also relieves it of the Toyota Lease.

10. TBC's bid imposes obligations on the Debtor that continue after closing. The Debtor must shut off its own Amazon offers once TBC's listings are live and send TBC the proceeds of any sales made through the Debtor's offers after closing. Ex. B § 9(f). It must also keep its Amazon Seller Central account open and in good standing until TBC's own listings are live, with no outside date. *Id.* § 12.

11. TBC's bid excludes any lease with Clegg Properties LLC, but it gives TBC up to 60 days' use of the Debtor's Shelbyville facility after closing, at a per diem equal to the rent, and bars the Debtor from rejecting the facility lease during those 60 days without TBC's consent. *Id.* § 4.

12. TBC is not obligated to close unless the Sale Order finds that TBC is a good-faith purchaser under 11 U.S.C. § 363(m) and has no successor liability. *Id.* § 6(d). TBC's bid also requires the Sale Order to transfer the equipment financed by LEAF Capital Funding, LLC ("LEAF") and Pawnee free and clear of their interests, on the premise that their agreements are secured financings rather than leases. *Id.* § 1(d). Both lenders objected to the Sale Motion before their counsel signed the Bid Procedures Order and either may object to the sale by the Objection Deadline. Docs. 98, 110; Doc. 120 at 10 ¶ 16. The Court has also entered an agreed order on Pawnee's motion for relief from the stay as to its equipment. Doc. 81.

13. TBC's bid also claims the Debtor's pending and accrued Amazon FBA reimbursements, although the Bid Procedures Order withholds the Debtor's Amazon account and other cash equivalents from the sale. Ex. B § 1(b)(g)(xi); Doc. 120 ¶ 3.

14. TBC is wholly owned by Calafia Group, LLC. Sahil Nandwani controls TBC and Calafia Group. He is also the manager and control person of two of the Debtor's creditors, Kensington Holdings, LLC ("Kensington") and CG BBBB, LLC ("CG BBBB").

15. Prior to the bankruptcy filing, Nandwani attempted a takeover of the Debtor in order to pay Kensington to the detriment of all other creditors and Investors. Also prior to the filing, Nandwani entered the business premises decreeing himself as the new manager of the business and attempted to take over the company's bank accounts.

16. Despite this, Debtor selected the TBC Bid because of the Auction representations that would result in it being in the best interest of the estate and its creditors.

17. The Cherneys committed to hiring all of the employees and to having the business remain in Kentucky, at its current location.

18. Neither the Cherneys nor TBC have offered any employment to Debtor's principal, nor have they engaged in meaningful discussions regarding any potential offer.

**TBC's Bid Is the Highest or Otherwise Best Bid Based Upon Auction Representations**

19. Section 363(b)(1) permits a debtor in possession to sell estate property outside the ordinary course of business after notice and a hearing. 11 U.S.C. §§ 363(b)(1), 1107(a). The Court may approve a sale of substantially all of a debtor's assets "when a sound business purpose dictates such action." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). A debtor's fiduciary duty to maximize value "does not require [it] to mechanically accept a bid with the highest dollar amount." *In re Family Christian, LLC*, 533 B.R. 600, 622

(Bankr. W.D. Mich. 2015). The debtor is "permitted, and in fact [is] encouraged, to evaluate other factors such as contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." *Id.*

20. The Sixth Circuit Bankruptcy Appellate Panel has adopted the same rule. Addressing value under § 363(m), it explained that value "need not be supported by a sale to the entity bidding the highest dollar amount" and that "[t]he mere existence of a higher offer is not an indication that the accepted offer is not for value." *Clearview E. Fund, LLC v. Woodward (In re Hum. Hous. Henrietta Hyatt, LLC)*, 666 B.R. 332, 351 (B.A.P. 6th Cir. 2025), *aff'd sub nom. Long v. Woodward (In re Hum. Hous. Henrietta Hyatt, LLC)*, No. 25-5204, 2026 U.S. App. LEXIS 3779 (6th Cir. Feb. 5, 2026). In *In re Quality Stores*, the court approved a lower bid because the higher bidder had not shown it could close, holding that "the burden of demonstrating financial wherewithal rested on the bidder." *In re Quality Stores, Inc.*, 272 B.R. 643, 647 (Bankr. W.D. Mich. 2002).

21. Courts outside this circuit apply the same rule. As one court put it, "a 'highest' bid is not always the 'highest and best' bid. The inclusion of 'best' in that conjunction is not mere surplusage." *In re Bakalis*, 220 B.R. 525, 533 (Bankr. E.D.N.Y. 1998) (approving a $10.5 million sale over an $11.2 million offer whose contingency and walk-away clauses put the closing at risk). More recently, applying *In re Family Christian*, a court approved a debtor's choice of a bid that brought the estate $137,500 less after payment of a termination fee, because the debtor reasonably concluded that the risk in the higher bid outweighed the difference. *In re Okla. Forge, LLC*, 671 B.R. 297, 305–08 (Bankr. N.D. Okla. 2025).

**A. The Bidding Procedures reserve this decision to the Debtor.**

22. Every bidder agreed to honor the Bidding Procedures, and they place the choice of the Successful Bid in the Debtor's reasonable discretion. Bidding Procedures §§ 4, 6. The Debtor may weigh "the net economic effect upon the Debtor's estate," contingencies, "the ability to close the proposed Sale Transaction on a basis acceptable to the Debtor," "any incremental costs to the Debtor as a result of potential closing delays," and "any other factors that the Debtor may deem relevant." *Id.* § 6. Until the Court approves a bid, the Debtor may reject any bid other than the Stalking Horse Bid that it reasonably deems "contrary to the best interests of the Debtor and its estate." *Id.* The Debtor accepts a bid "only when the bid has been approved by the Bankruptcy Court at the Sale Hearing." *Id.* The SBA, Debtor's secured lender, agreed to the Bid Procedures Order. Doc. 120 at 10.

**B. TBC has not confirmed the representations on which the Debtor selected its bid.**

23. The Debtor selected TBC's bid because of the Auction Representations.

24. The Auction Representations also matter on their own terms. The first two, $116,000.00 in cash and assumption of the Toyota Lease, are the whole of what TBC offers, and the Bidding Procedures require "evidence satisfactory to the Debtor, in its sole discretion, of the bidder's financial wherewithal and ability to consummate the transaction." Bidding Procedures § 4(b). The burden of that showing is on the bidder. *Quality Stores*, 272 B.R. at 647.

25. The other two representations were part of the reason the Debtor chose TBC's bid, but they appear nowhere in TBC's written bid. Ex. B § 7. A promise to keep a business in Kentucky and retain its employees is worth something only if it binds the buyer after closing, which is why the Debtor asked TBC to make those commitments in a Declaration.

Without a binding nature of the Auction Representations, TBC's bid is not superior overall for the bankruptcy estate.

26. A higher bidder that will not address the risks a debtor identifies gives the debtor good reason to choose another bid. In *In re Family Christian*, the debtors repeatedly asked the higher bidder to guarantee a minimum value to the estate. Instead, the bidder "chose to criticize" the winning bid "and question the Debtors' business judgment." 533 B.R. at 624. Because the bidder "failed to provide any firm commitment" to pay administrative expenses in full, the court could not "conclude that the [higher] bid is the highest and best bid." *Id.* at 630–31. The *In re Oklahoma Forge* court approved a lower bid where the debtor had "identified its perceived risk and provided [the higher bidder] with the opportunity to effectively eliminate the risk," and the bidder "chose not to do so." 671 B.R. at 308. The Debtor gave TBC that opportunity to affirm the Auction Representations in its Declaration. TBC declined to give more than an "intention" that is not binding. As of the time of this filing, Debtor does not have an executed Declaration from TBC.

**C. The Cherneys' Bid may be better for the estate once TBC's remaining terms are weighed.**

27. The price gap is smaller than it looks. Measured by its net economic effect on the estate, TBC's bid is worth $10,000.00 more in cash, plus its assumption of the Toyota Lease. In exchange, TBC's bid ties the Debtor to TBC's Amazon transition after closing with no outside date, limits the Debtor's control of its facility lease for 60 days after closing, and claims Amazon reimbursements that the Bid Procedures Order withheld from the sale. Each is a cost or contingency the Bidding Procedures let the Debtor weigh. Bidding Procedures § 6. In *In re Family Christian*, the court found that the debtors "legitimately perceived risks" in a

facially higher bid, including occupancy and other expenses that would have stayed with the debtors while the bidder liquidated the assets. 533 B.R. at 619, 624.

28. TBC's closing also depends on findings that may be contested. TBC is not obligated to close without a good-faith finding under § 363(m), and its bid requires the Sale Order to transfer LEAF's and Pawnee's equipment free and clear of their interests, which either lender may contest by the Objection Deadline. Ex. B §§ 1(d), 6(d); Doc. 120 ¶ 16. Uncertainty about whether a higher bidder can close is what justified the lower bid in *In re Quality Stores*, where the higher bidder's uncertain finances "justified the debtors' business judgment that [its] bid was not the best offer." 272 B.R. at 647.

**D. Selection of the Successful Bid Requires a Good Faith Finding.**

29. A good-faith purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Hum. Hous.*, 666 B.R. at 351 (quoting *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005)). The inquiry "focuses on the purchaser's conduct with respect to the sale." *Id.* Good faith is lost through "fraud or collusion between the purchaser and the seller or the other bidders," or through an "attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *Made in Detroit*, 414 F.3d at 581).

30. TBC's ties to the Debtor's creditors do not defeat good faith by themselves, because the inquiry turns on TBC's conduct. See *Hum. Hous.*, 666 B.R. at 351. But those ties make the finding depend on facts only TBC can supply. TBC is under common control with two of the Debtor's creditors, one of which obtained an order authorizing a Rule 2004 examination of the Debtor, and TBC's funding comes from a third affiliate on terms that will be "documented separately" and that neither the Debtor nor the Court has seen. Ex. B § 3(a). When asked, TBC declined to commit to producing the documents governing that financing

before the Sale Hearing. Whether TBC used information its affiliates obtained as creditors, and whether it has any understanding with them about this sale, bear directly on collusion and unfair advantage. In *In re Family Christian*, the court would not treat as eligible the bid of a party that had been privy to information through its role in the sale process, inferring that the party "gained an unfair advantage" through conduct "similar to insider trading." 533 B.R. at 631.

31. The Debtor asked TBC to address each of these points under oath and as of the time of this filing, Debtor did not have an Executed Declaration. A good-faith finding needs evidence, and the party seeking the sale must supply it. In *In re Family Christian*, the court denied a sale in part because the debtors had not shown the buyer's good faith "by a preponderance of the evidence." 533 B.R. at 628.

**Proposed Sale and Allocation of Proceeds**

32. The Debtor asks the Court to approve the sale of substantially all of its assets to TBC on the terms of Exhibit B, free and clear of all interests under 11 U.S.C. § 363(f). Bidding Procedures § 10.

33. As paragraph 17 of the Bid Procedures Order requires, the Debtor proposes to allocate the sale proceeds as shown below. The proposed allocation the Debtor filed on November 14 transposed the amounts payable to the U.S. Trustee and to Michael E. Wheatley, the former Subchapter V trustee. Doc. 138. The table corrects them.

| **Recipient** | **Amount** | **Basis** |
|---|---|---|
| Debra and Marvin Cherney | $6,000.00 | Bid Procedures Order ¶10 |
| U.S. Trustee (quarterly fees) | $1,160.00 | Bid Procedures Order ¶ 11 |
| Michael E. Wheatley (former Subchapter V trustee) | $3,327.50 | Bid Procedures Order ¶ 11; Doc. 129 |

| **Recipient** | **Amount** | **Basis** |
|---|---|---|
| Kaplan Johnson Abate & Bird LLP | $31,672.50 | Bid Procedures Order ¶ 11 |
| U.S. Small Business Administration | $73,840.00 | UCC lien |
| **Total** | $116,000.00 | |

Respectfully submitted,

*/s/ Charity S. Bird*

CHARITY S. BIRD
**Kaplan Johnson Abate & Bird LLP**
471 W. Main Street, Suite 203
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
*Counsel for Debtor*

**Certificate of Service**

I certify that on November 18, 2026, the foregoing *Notice of Successful Bid* was (a) mailed electronically through the Bankruptcy Court's ECF system to the electronic addresses as set forth in the ECF system to the United States Trustee and all other persons receiving electronic notifications in this case, (b) mailed via first-class U.S. mail to all persons who have filed a request to receive such notices, and (c) mailed via first-class U.S. mail to the following holders of liens on or interests in the Debtor's assets:

Daytona Funding Solutions Corp
266 Broadway, Suite 401
Brooklyn, NY 11211-6306

First Citizens Bank & Trust Company
P.O. Box 100706
Pasadena, CA 91189

First Citizens Bank & Trust Company
c/o Greenspoon Marder LLP
100 West Cypress Creek Rd., Suite 700
Fort Lauderdale, FL 33309-2195

Five Star Bank
2240 Douglas Blvd, Suite 100
Roseville, CA 95661-3874

Kensington Holdings, LLC
30 N Gould St, Ste N
Sheridan, WY 82801-6317

Kensington Holdings, LLC
c/o Immix Law Group PC
600 NW Naito Pkwy, Suite G
Portland, OR 97209-3701

LEAF Capital Funding, LLC
PO Box 5066
Hartford, CT 06102-5066

LEAF Capital Funding, LLC
c/o Goetz Platzer LLP
1325 Avenue of the Americas, 14th Floor
New York, NY 10019-6067

Meridian Equipment Finance, LLC
367 Eagleview Blvd
Exton, PA 19341-1156

Meridian Equipment Finance, LLC
c/o Saldutti Law Group
1040 Kings Highway N., Suite 100
Cherry Hill, NJ 08034-1925

Novus Capital Funding
970 Lake Carillon Dr
Saint Petersburg, FL 33716-1129

OnRamp
1705 S Capital of Texas Hwy, #500
Austin, TX 78746-6597

Parafin Capital
301 Howard St, Suite 1800
San Francisco, CA 94105-6614

Pawnee Leasing Corporation
700 Centre Avenue
Fort Collins, CO 80526

Pitney Bowes Inc.
3001 Summer Street
Stamford, CT 06926-0001

Shopify Capital
33 New Montgomery St, Suite 750
San Francisco, CA 94105

The Smarter Merchant
460 Park Ave S
New York, NY 10016-7315

Toyota Industries Commercial Finance, Inc.
PO Box 660926
Dallas, TX 75266-0926

Toyota Industries Commercial Finance, Inc.
PO Box 9050
Coppell, TX 75019-9050

Toyota Industries Commercial Finance, Inc.
c/o Weltman, Weinberg & Reis Co., LPA
5990 West Creek Rd., Suite 200
Independence, OH 44131-2191

United States of America on behalf of the
U.S. Small Business Administration
c/o U.S. Attorney's Office
717 W. Broadway
Louisville, KY 40202-2215

U.S. Small Business Administration
c/o U.S. Attorney's Office (EDKY)
Attn: Bankruptcy
PO Box 1490
Lexington, KY 40588-1490

U.S. Small Business Administration
Kentucky District Office
600 Dr. Martin Luther King, Jr. Place,
Room 188
Louisville, KY 40202-2270

U.S. Small Business Administration
Tennessee District Office
2 International Plaza, Suite 500
Nashville, TN 37217-2002

U.S. Small Business Administration
1835 Assembly Street, Suite 1425
Columbia, SC 29201-2453

Wintrust Financial
2050 Main St, Suite 230
Irvine, CA 92614-8264

*/s/ Charity S. Bird*

CHARITY S. BIRD